UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------X
                                      :
JAMIL GULMANN SHIHAB,                 :
                                      :        23cv7266 (DLC)
                    Plaintiff,        :
                                      :          OPINION
          -v-                         :         AND ORDER
                                      :
SOURCE DIGITAL, INC., et al.          :
                                      :
                    Defendants.       :
                                      :
------------------------------------- X

APPEARANCES:

For the plaintiff Jamil Gulmann Shihab, p/k/a Jamil GS:
Mackenzie Paladino
Scott Burroughs
Doniger/Burroughs
247 Water Street, First Floor
New York, NY 10038

For defendant Source Digital, Inc., d/b/a The Source:
Matthew F. Abbott
The McMillan Firm
240 West 35th Steet, Suite 405
New York, NY 10001

DENISE COTE, District Judge:

Jamil Gulmann Shihab ("Shihab") brings this action against

Source Digital, Inc. ("Source") under the Copyright Act and §

1202 of the Digital Millennium Copyright Act ("DMCA") and has

now moved for summary judgment.  For the following reasons,

Shihab's motion is granted on its claim of copyright

infringement; summary judgment is also granted in plaintiff's

favor with respect to the defendant's assertion of the fair use

defense.  Summary judgment is denied on the claim that the defendant violated the DMCA.

## Background

The following facts are taken from the evidence submitted in connection with the plaintiff's summary judgment motion.  The facts are undisputed or taken in the light most favorable to the defendant, unless otherwise noted.

Shihab is a photographer who uses the professional name Jamil GS.  He has taken well known photographs of hip-hop artists.  Shihab took photographs of two members of the "Wu Tang Clan", who are known as "Raekwon" and "Ghost Face Killah", in the Chinatown neighborhood of New York City in the summer of 1995.

Twenty-five years later, in 2020, Shihab obtained a copyright registration for his six Chinatown photos as a group.  This group was one of six groups of seventy photographs published between February and December in 1995.  The registration indicates that the group at issue here was first published in September 1995.  The effective date of the registration is October 8, 2020.  It is not disputed that one of these registered photographs features the two Wu Tang Clan members in front of a jewelry display, with one making a fist towards the camera and the other making a gesture with his thumb

and two fingers towards the camera (the "Original Photo").[1]

Defendant Source is a privately-owned corporation, formed in 2014, that manages the digital platform of The Source Magazine and operates the website www.thesource.com.  The Source Magazine has focused on hip-hop and urban culture since 1988; the website also publishes content related to hip-hop culture.  Source also operates an Instagram account under the handle @thesource.  Source publishes thousands of pieces of content each year on the website and Instagram account.  Source's Instagram page contains a link that directs viewers to its website.  Source earns revenue from advertisements on its website.

Source employs independent contractors to curate content for its online platforms.  Source maintains Copyright Guidelines ("Guidelines") for these contributors.  The document instructs contributors to respect the property rights of others and warns

---

[1] The plaintiff does not appear to have provided a copy of the Original Photo with this motion.  In a notice of Errata, he supplies a photograph which his declaration describes as the Original Photograph.  The photograph, however, has his signature and the copyright symbol © superimposed on it.  Without a more definitive statement by Shihab, however, it will not be assumed that the plaintiff first published the Original Photo in 1995 with his identifying information superimposed on it.
To begin with, the plaintiff has not provided evidence of where the Original Photo was published in 1995.  There is also evidence in the record of the Original Photo with the plaintiff's identifying information superimposed on it being published years later, that is, in the plaintiff's 2023 Instagram post, as described below.

that they are "legally responsible" for all materials they submit for posting. It describes general principles of copyright law and asks contributors to consider the following when submitting materials to be posted. First, try to use an image from the Source database. Second, when submitting a photograph from another source, obtain permission in writing from the copyright holder, and when doing so "always" consult Source's attorneys to ensure that the proper permissions have been given. Third, search for images on Creative Commons and Getty Images, using proper filters. Finally, the Guidelines describe the concept of fair use, explaining that "you must actually comment on the image itself and the contents therein" if relying on the fair use doctrine. It concludes in bold: **"if you have any doubt as to whether or not an image is subject to copyright, assume that it is and consult with our attorneys before submitting for posting."**

A July 10, 2019 email described new procedures at Source was adopting for the posting of images. It reminded contributors that Source has a large database of images it owns, curated by photographer Daniel Garcia. It also described its licensing subscriptions. If a photograph was selected from either source, it warned that "credit attribution" had to appear next to the downloaded photograph. It also explained how to request permission from copyright holders for other images, and

4

warned in bolded caps: **"DO NOT REMOVE PHOTO CREDITS."**  It ended by reminding contributors that, if they had "any doubt as to whether or not an image is subject to copyright, assume that it is and consult with our attorneys."

An independent contractor for Source, Terrence Hamilton, published a post to @thesource Instagram account on October 26, 2022 that the parties appear to agree includes a copy of the Original Photo (the "Posted Photo").  Hamilton obtained the Posted Photo from one of the many social media accounts related to hip-hop culture that he follows.

Neither Hamilton nor Source obtained authorization from Shihab to display the Posted Photo.  The Posted Photo was accompanied by a caption that included Source's Instagram username, "thesource", and a hashtag, "#sourceclassics".  The caption also included Shihab's Instagram username (@jamilgshere) next to a camera emoji, thereby identifying Shihab as the photographer.

Shihab became aware of the Posted Photo on October 31, just a few days after it was published.  The next day, November 1, Shihab's counsel sent a cease-and-desist letter to Source, demanding that Source discontinue its use of the Posted Photo. On November 4, 2022, Source removed the Posted Photo from its Instagram account.

At some point that he does not identify, Shihab added his

5

signature JamilGS and the symbol © to either the top left corner or to the bottom right corner of copies of the Original Photo (the "Top CMI Photo" and "Bottom CMI Photo").  On October 18, 2023, Shihab published the Bottom CMI Photo to his Instagram page.  At some undisclosed date, he published the Top CMI Photo to his website.  Shihab has not granted any digital use licenses for any version of the CMI Photo.

The complaint contains three causes of action: direct copyright infringement, vicarious copyright infringement, and violations of § 1202 of the DMCA.  Fact discovery closed on February 23, 2024.  The plaintiff filed a motion for summary judgment on March 21.  The motion seeks summary judgment on two of his claims.[2]  The motion became fully submitted on April 25.

## Discussion

The plaintiff has moved for summary judgment on his claims that the defendant willfully violated the Copyright Act by publishing the Posted Photo and that the defendant violated §§ 1202(a) and (b) of the DMCA by removing the plaintiff's signature and copyright symbol from the CMI Photo and publishing it as a Source photograph.  The plaintiff seeks a trial on damages.

---

[2] In his motion for summary judgment, the plaintiff does not raise arguments pertaining to his claim for vicarious copyright infringement.

In support of his motion, the plaintiff has offered his own declaration, his copyright registration for the Original Photo, the defendant's Copyright Guidelines, a screenshot of both versions of the CMI Photo, and a screenshot of the Posted Photo. The plaintiff has also provided excerpts of the deposition of Londell McMillian, Source's chairman. In opposition, the defendant has offered declarations of Hamilton and McMillian, as well as screenshots of the plaintiff's website.

A motion for summary judgment may be granted "only if there is no genuine issue of fact and the prevailing party [is] entitled to judgment as a matter of law." Indemn. Ins. Co. of N. Am. v. Unitrans Int' l Corp., 98 F.4th 73, 77 (2d Cir. 2024) (citation omitted). "Summary judgment must be rejected if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id. (citation omitted). The court's role is "not to resolve disputed questions of fact but solely to determine whether, as to any material fact, there is a genuine issue to be tried." Moll v. Telesector Res. Grp., Inc., 94 F.4th 218, 227 (2d Cir. 2024) (citation omitted). In determining whether genuine issues of fact exist, the court must "review the record taken as a whole" and "must draw all reasonable inferences in favor of the nonmoving party." Id.

7

I.    Copyright Act

The plaintiff asserts that the defendant willfully violated his rights under the Copyright Act by publishing the Posted Photo without his authorization.  The defendant does not deny that it published the Posted Photo without obtaining a license, in violation of the Copyright Act.  It asserts, however, the defense of fair use and denies that any infringement was willful.

A. Copyright Infringement

Exercising its constitutional power, Congress has granted an author of original work that is fixed in a tangible medium of expression the exclusive right to produce the work.  Google LLC v. Oracle America, Inc., 593 U.S. 1, 16-17 (2021).  The purpose of the Copyright Act "is to secure a fair return for an author's creative labor", and "the ultimate aim is, by this incentive, to stimulate artistic creativity for the general public good." Twentieth Cent. Music Corp. v. Aiken, 422 U.S. 151, 156 (1975) (citation omitted).

Section 501 of the Copyright Act provides that "[a]nyone who violates any of the exclusive rights of the copyright owner as provided by sections 106 through 122 [of the Copyright Act] . . . is an infringer of the copyright or right of the author." 17 U.S.C. § 501(a).  Under § 106,

8

the owner of copyright under this title has the exclusive rights to do and to authorize . . . the following: (1) to reproduce the copyrighted work . . . and (5) in the case of . . . pictorial [works] to display the copyrighted work publicly.

17 U.S.C. § 106.  The various provisions of the Copyright Act reflect "a balance of competing claims upon the public interest: Creative work is to be encouraged and rewarded, but private motivation must ultimately serve the cause of promoting broad public availability of literature, music, and the other arts." Andy Warhol Found. for Visual Arts, Inc. v. Goldsmith, 598 U.S. 508, 526 (2023) (citation omitted).

"A claim of direct copyright infringement requires proof that (1) the plaintiff had a valid copyright in the work, and (2) the defendant infringed the copyright by violating one of the exclusive rights that 17 U.S.C. § 106 bestows upon the copyright holder."  Smith v. Barnesandnoble.com, LLC, 839 F.3d 163, 166 (2d Cir. 2016).  It is not disputed that Source's publication of the Posted Photo constitutes direct copyright infringement.  Shihab has a valid copyright for the Original Photo.  Source made use of the Original Photo in its October 26, 2022 Instagram post without authorization from Shihab.  This unauthorized use was a direct infringement of Shihab's exclusive rights to reproduce and publicly display the Original Photo.

The defendant argues, however, that the Posted Photo constitutes fair use and did not violate Shihab's rights in the

9

Original Photo.  "[A] copyright holder may not prevent another person from making a 'fair use' of a copyrighted work."  Google, 593 U.S. at 2.

The fair use doctrine originated as an equitable rule of reason.  Id. at 18.  Section 107 of the Copyright Act codifies the fair use doctrine and provides that

> the fair use of a copyrighted work, including such use by reproduction in copies or phonorecords or by any other means specified by that section, for purposes such as criticism, comment, news reporting, teaching (including multiple copies for classroom use), scholarship, or research, is not an infringement of copyright.

17 U.S.C. § 107.  To determine whether the use of a work is a fair use, the following factors must be considered:

> (1) the purpose and character of the use, including whether such use is of a commercial nature or is for nonprofit educational purposes; (2) the nature of the copyrighted work; (3) the amount and substantiality of the portion used in relation to the copyrighted work as a whole; and (4) the effect of the use upon the potential market for or value of the copyrighted work.

Id.

The statutory embodiment of the doctrine "indicates, rather than dictates," how the doctrine applies.  Google, 593 U.S. at 18.  All four factors listed in § 107 "are to be explored, and the results weighed together, in light of the purposes of copyright."  Andy Warhol Found. for Visual Arts, Inc. v. Goldsmith, 11 F.4th 26, 37 (2d Cir. 2021) (citation omitted).  The list of factors is not exhaustive.  Google, 593 U.S. at 19.

10

Fair use, after all, is a "flexible" concept.  Warhol, 598 U.S. at 527 (citation omitted).  "The party asserting fair use bears the burden of proof."  Authors Guild v. Google, Inc., 804 F.3d 202, 213 (2d Cir. 2015) (citation omitted).

The plaintiff has shown that he is entitled to summary judgment on the defendant's fair use defense.  Each of the four factors is discussed in turn.

a. Purpose of Use

In assessing the first factor of § 107, the purpose and character of the use, a court must determine "whether the new work merely supersedes the objects of the original creation (supplanting the original), or instead adds something new, with a further purpose or different character."  Warhol, 598 U.S. at 528 (citation omitted).  The purposes listed in the preamble to § 107, including criticism, comment, news reporting, and teaching, are the sort of copying that Congress and the courts "have most commonly found to be fair uses and so may guide the first factor inquiry."  Id. (citation omitted).  Indeed, teaching and scholarship are paradigmatic examples of privileged copying.  Google, 593 U.S. at 32.

The first factor asks "whether and to what extent the use at issue has a purpose or character different from the original.  Warhol, 598 U.S. at 529 (citation omitted).  This is an objective inquiry.  Id. at 545.  A use that has a "further

11

purpose or different character is said to be transformative."
Id. at 529 (citation omitted).  To be transformative, the
transformation "must go beyond that required to qualify" a work
as a derivative work protected by the Copyright Act.  Id.

Whether a use is commercial as opposed to nonprofit is an
additional element in the analysis of the first factor.  Warhol,
598 U.S. at 531.  But copying by a commercial endeavor is not
dispositive of the first factor.  Google, 593 U.S. at 32.  After
all, "[a]lmost all newspapers, books and magazines are published
by commercial enterprises that seek a profit."  Swatch Grp.
Mgmt. Svcs. Ltd. v. Bloomberg L.P., 756 F.3d 73, 83 (2d Cir.
2014) (citation omitted).  But, where the copy and the original
"share the same or highly similar purposes," and the use of the
copy was "of a commercial nature, the first factor is likely to
weigh against fair use."  Warhol, 598 U.S. at 532-33.

Another consideration that is often discussed in connection
with the first factor is good faith.  Google, 593 U.S. at 32.
Skepticism over the relevance of this consideration exists,
however, since "copyright is not a privilege reserved for the
well-behaved."  Id. (citation omitted).

The first factor of § 107 weighs strongly against the fair
use defense.  The defendant has not offered evidence to create a
question of fact as to whether its use of the Posted Photo was
transformative.  The defendant has also failed to offer evidence

12

that its use of the Posted Photo was for non-commercial purposes.

The defendant's arguments to the contrary fail.  It argues that its use was transformative because it presented the Original Photo in a new context, that is, that it commented on the historical and cultural significance of the image to the hip-hop community and enabled viewers to associate and display the post with other similar content by use of the Source hashtag, including its hashtag #sourceclassics.  The objective inquiry demanded by Warhol finds no support in the record for this argument.  As Source advised its contractors in its Guidelines, to take advantage of the fair use defense "you must actually comment on the image itself and the contents therein."  The Source post did not do so.  Simply adding a list of hashtags to the post is not commentary.  More is required to create commentary.  As Source Guidelines advised contractors, "For example, comment on the artist's fashion choices in the photo if you are writing an article about Lil' Wayne's styles."

The weakness in the defendant's position is illuminated by what it does not argue.  The defendant does not suggest that the Posted Photo differs in any material way from the Original Photo.  Indeed, it contends it made no alteration to a photograph that it located on the web and moved to its Instagram page.  Adding hashtags to the post, for instance,

13

#sourceclassics or #culture, does not transform the image or create a transformative use.

The defendant next argues that its use of the Posted Photo was non-commercial because the purpose of the Instagram page is to celebrate the legacy of hip-hop and maintain its relevance. It stresses that no advertisements run on photographic posts on its Instagram account. This argument also fails to raise a question of fact regarding the commercial purpose behind the display of the Posted Photo on the Instagram page. Source's Instagram page is linked to its for-profit website and is used for promotion and marketing. The defendant is a commercial enterprise, seeking to profit from the revenue that accrues to Source Magazine and its website. The celebration of hip-hop is the engine that drives its for-profit business. Source's use of the Posted Photo cannot be objectively characterized as commentary, news, teaching, or any of the other fair uses listed in the preamble to § 107.

Finally, Source asserts that there is evidence of its good faith from the fact that the post included the plaintiff's tag, which gave him credit as the photographer, and from its quick removal of the Posted Photo when it received the cease and desist letter. The defendant's scienter may be highly relevant to the issue of damages, but it does not assist the defendant in connection with the first fair use factor.

14

b. Nature of the Work

The second factor under § 107

> directs courts to consider the nature of the copyrighted work, including (1) whether it is expressive or creative or more factual, with a greater leeway being allowed to a claim of fair use where the work is factual or informational, and (2) whether the work is published or unpublished, with the scope of fair use involving unpublished works being considerably narrower.

Warhol, 11 F.4th 26, 45 (2d Cir. 2021) (citation omitted).  This factor generally favors the fair use defense when a copyrighted work is more "informational or functional" than "creative".  4 Nimmer on Copyright § 13F.06 [A] (2024).  The second factor has "rarely", however, played a significant role in the determination of a fair use dispute since even factual works are entitled to copyright protection.  Authors Guild, 804 F.3d at 220.

The second factor of § 107 weighs neither strongly in favor of nor against the fair use defense.  The plaintiff published the Original Photo in 1995 and registered it with the Copyright Office a quarter of a century later.  The plaintiff in all likelihood made choices as a photographer about lighting, angle, and the shutter speed of the camera lens when he took the Original Photo, but has not identified where or for what purpose it was originally published.  Therefore, there is no basis to assess whether it was published as an expressive or informative act.  The value of the Original Photo appears to stem

15

principally from the subject matter of the photograph rather than artistic expression or the skill of the photographer.  The central feature of the Original Photo and its importance depends on its subject -- the two members of the Wu Tang Clan.  The evidence submitted on summary judgment therefore indicates that the Original Photo serves principally a factual purpose.

c. Portion of the Work

The third factor considers "the amount and substantiality of the portion used in relation to the copyrighted work as a whole."  17 U.S.C. § 107(3).  Even "a small amount" of copying may fall outside the scope of the fair use doctrine where the excerpt copied "consists of the 'heart'" of the original work.  Google, 593 U.S. at 33 (citation omitted).  A court may consider whether the substantiality of the challenged use "was tethered to a valid, and transformative, purpose."  Id. at 34.  But "the ultimate question under this factor is whether the quantity and value of the materials used are reasonable in relation to the purpose of the copying."  Warhol, 11 F.4th at 46 (citation omitted).

This factor weighs strongly against the fair use defense. The parties seem to agree that the Posted Photo replicates every material feature of the Original Photo.  The defendant's Instagram post makes use of the "heart" of the Original Photo.

16

Both men who are the subjects of the Original Photo appear unaltered in the infringing work.

The defendant argues that the third factor of § 107 weighs in favor of fair use because it needed to use a substantial portion of the Original Photo in its Instagram post to properly identify its subjects and to comment on the context of the image.  As already noted, however, the defendant has not shown a transformative purpose for the Posted Photo.

d. Effect on Market

The fourth factor under § 107 considers "whether, if the challenged use becomes widespread, it will adversely affect the potential market for the copyrighted work" and for the market for any derivative work.  Warhol, 11 F.4th at 48-50 (citation omitted).  The question is whether the copying "usurps the market for the first by offering a competing substitute."  Id. at 48.  "[V]erbatim copying of the original in its entirety for commercial purposes may well produce a market substitute for an author's work."  Google, 593 U.S. at 35.  In weighing this factor, a court may consider where appropriate any public benefits or harms from the copying and their extent.  Id. at 35-37.  "This factor is undoubtedly the single most important element of fair use."  Fox News Network, LLC v. Tveyes, Inc., 883 F.3d 169, 179 (2d Cir. 2018) (citation omitted).  The

copyright holder does not bear a burden of showing actual market harm.  Warhol, 11 F.4th at 49.

In sum, this factor "focuses on whether the copy brings to the marketplace a competing substitute for the original, or its derivative, so as to deprive the rights holder of significant revenues because of the likelihood that potential purchasers may opt to acquire the copy in preference to the original."  Fox News, 883 F.3d at 179 (citation omitted).  This factor "requires consideration of not only the market harm caused by the particular actions of the alleged infringer, but also the market harm that would result from unrestricted and widespread conduct of the same sort."  Id. (citation omitted).  Market harm must be assessed even where an author decides not to publish his copyrighted work.  Castle Rock Entm't, Inc. v. Carol Pub. Grp., Inc., 150 F.3d 132, 146 (2d Cir. 1998).

The fourth factor of § 107 weighs strongly against a finding of fair use.  Source made use of the "heart" of the Photo without purchasing a license from the plaintiff.  The Posted Photo entirely usurps and substitutes for the Original Photo. If conduct like this were widespread, it would seriously damage the rights of professional photographers who own copyrights in their photographs.

The defendant argues that the plaintiff has failed to prove there was some meaningful likelihood of future harm as a result

18

of the publication of the Posted Photo.  The defendant points out that the plaintiff has not granted any digital use licenses for the Original Photo in the almost thirty years since it was published, and concludes that the market for the Original Photo is nonexistent.  This argument has little force.  Unlicensed copying of essentially his entire Original Photo does great harm to the plaintiff's rights under the Copyright Act.  This is true even though there is no evidence that he ever attempted to license it.  Similarly, widespread copying of the works of professional photographers without licensing their works would damage an entire profession.  There is a reason that the defendant instructs its contractors to assume that all photographs are copyrighted, to obtain permission before using them, and to consult with Source attorneys if in doubt.  The market effect of ignoring the rights of copyright holders is serious and there is no public interest in this case to weigh against that injury and market harm.

　　e. Consideration of All Fair Use Factors

With all four factors taken into consideration, the defendant's reliance on the fair use doctrine fails.  The defendant has failed to offer evidence that raises a question of fact as to its fair use of the Original Photo.  When measured objectively, publishing the Posted Photo was not a transformative use of the Original Photo.  While the value of

the Original Photo may principally stem from its capture of the images of two hip-hop artists at a point in time, rather than its artistic expression, the defendant displayed the "heart" of the Original Photo.  Furthermore, the defendant's unlicensed use of the Posted Photo created a strong likelihood of market harm. Granting summary judgment to the plaintiff photographer and denying the fair use defense is warranted on this record.  See Hudson Furniture, Inc. v. Mizrahi, 20cv4891 (PAC), 2023 WL 6214908, at *12-14 (S.D.N.Y. Sept. 25, 2023)(photograph used in website advertising);  Otto v. Hearst Comm., Inc., 345 F.Supp.3d 412, 426-33 (S.D.N.Y. 2018)(photograph illustrated a news article); Barcroft Media, Ltd. v. Coed Media Group, LLC, 297 F.Supp.3d 339, 350-355 (S.D.N.Y. 2017) (photograph used on defendant's celebrity gossip website); but see Whiddon v. Buzzfeed, Inc., 638 F.Supp.3d 342, 351 (S.D.N.Y. 2022) (transformative use); Marano v. Metropolitan Museum of Art, 472 F.Supp.3d 76, 82-88 (S.D.N.Y. 2020) (transformative use).

B. Willfulness

The plaintiff seeks statutory damages for the defendant's willful violation of his copyright.  With proof of willfulness, the plaintiff may obtain statutory damages up to $150,000 for a violation of the Copyright Act.  17 U.S.C. § 504(c).  A violation of the Copyright Act "is willful when a defendant had knowledge that its conduct was unlawful or recklessly

20

disregarded that possibility."  Castillo v. G&M Realty L.P., 950 F.3d 155, 170 (2d Cir. 2020).

There is a question of fact as to whether the defendant's infringement was willful.  While neither Source nor Hamilton contacted Shihab for authorization to publish the Posted Photo, Source did identify Shihab as the photographer on its post.  In addition, Source maintains a policy that contractors should assume that they need copyright permission for every photograph and must obtain permission from the copyright holder before making use of a work.  Hamilton does not remember from which website he took the Posted Photograph, but believes he obtained it from a social media account he follows.  Whether Source recklessly disregarded that its use of the Original Photo was a violation of the plaintiff's copyright is a factual dispute that cannot be resolved on summary judgment.

C. DMCA Violations

The plaintiff asserts that Source violated §§ 1202(a) and (b) of the DMCA by removing his copyright management information ("CMI") from the CMI Photo and knowingly concealing its infringement of Shihab's rights under the Copyright Act. Shihab's motion for summary judgment on these claims is denied.

CMI is broadly defined as "information conveyed in connection with copies or phonorecords of a work or performances or displays of a work."  17 U.S.C. § 1202(c).  The categories of

21

CMI include "[t]he name of, and other identifying information about, the author of a work," and "the copyright owner of the work." Id.; see Mango v. Buzzfeed, Inc., 970 F.3d 167, 171 (2d Cir. 2020). The plaintiff's signature and the copyright symbol next to his name, which were placed on the CMI Photos, constitute CMI.

A. Section 1202(a)

Section 1202(a) provides that

> no person shall knowingly and with the intent to induce, enable, facilitate, or conceal infringement -- (1) provide copyright management information that is false, or (2) distribute or import for distribution copyright management information that is false.

17 U.S.C. § 1202(a). To establish a violation of § 1202(a), a plaintiff must prove that (1) the defendant provided, distributed, or imported for distribution CMI in connection with a copyrighted work; (ii) the CMI was false; and (iii) the defendant knew the CMI was false; and (iv) acted with the intent to induce, enable, facilitate, or conceal an infringement. The last two elements are the so-called double scienter requirement. Steinmetz v. Shutterstock, Inc., 629 F.Supp.3d 74, 85 (S.D.N.Y. 2022) (citing 17 U.S.C. § 1202(a)).

The plaintiff has failed to show that the defendant violated § 1202(a). Shihab has failed to show that the defendant provided false CMI in connection with the Posted Photo. Separately, he has failed to show that the defendant

22

acted with the intent to conceal copyright infringement; the caption to the right of the Posted Photo includes a "photo credit" for the plaintiff.  See Gattoni v. Tibi, LLC, 254 F.Supp.3d 659, 664 (S.D.N.Y. 2017).

The plaintiff argues that the defendant violated § 1202(a) because it included its own name in the caption of the Instagram post, which constitutes false CMI.  This argument fails.  CMI includes identifying information about a work, including its title and author, conveyed "in connection with" the work.  17 U.S.C. § 1202(c).  See Bounce Exchange Inc. v. Zeus Enterprise Ltd., 15cv3268 (DLC), 2015 WL 8579023, at *3 (S.D.N.Y. Dec. 9, 2015).  The defendant's Instagram account handle, @thesource, and its hashtag, #sourceclassics, are not conveyed "in connection with" the work.  They do not identify either the title or author of the Posted Photo.  See McGucken v. Shutterstock, 22cv905 (JHR), 2023 WL 6390530, *10-11 (Oct. 2, 2023 S.D.N.Y.) (publisher's watermark on a copyrighted photograph is not false CMI).

The Source handle and hashtag are associated with the defendant's Instagram account and identify that account and its features. The defendant's Instagram handle appears on every post made on its Instagram account, identifying the defendant as the author of the posts.  It does not imply that the defendant is also the author of all or any of the posted material, including

23

the Posted Photo.  The same is true of the defendant's hashtag.
The hashtag identified a topic of relevance for the Posted
Photo, but does not imply that the defendant is the author.

B. Section 1202(b)

Section 1202(b) addresses the removal or alteration of CMI.
It provides that

> no person shall, without the authority of the copyright
> owner or the law . . .
>
> (1) intentionally remove or alter any copyright management
> information, [or] . . .
>
> (3) distribute . . .  works, [or] copies of works . . .
> knowing that copyright management information has been
> removed or altered without authority of the copyright owner
> or the law,
>
> knowing, or, . . . having reasonable grounds to know, that
> it will induce, enable, facilitate, or conceal an
> infringement of any right under this title.

17 U.S.C. § 1202(b)(1), (3).

To establish a violation of § 1202(b)(1), a plaintiff must
prove the following: (1) the existence of CMI in connection with
a copyrighted work; (2) that a defendant removed or altered the
CMI; and (3) that the defendant did so intentionally; (4)
knowing that the removal was without the authority of the
copyright holder or the law; and (5) while knowing or having
reasonable grounds to know that the removal would induce,
enable, facilitate, or conceal an infringement of copyright.

To prove a violation of § 1202(b)(3), the plaintiff must

24

show

> (1) the existence of CMI in connection with a copyrighted work; and (2) that a defendant distributed works or copies of works; (3) while knowing that CMI has been removed or altered without authority of the copyright owner or the law; and (4) while knowing, or having reasonable grounds to know that such distribution will induce, enable, facilitate, or conceal an infringement.

Mango, 970 F.3d at 171 (citation omitted).

Like § 1202(a), § 1202(b) contains a double-scienter requirement.  The plaintiff must prove that the defendant had "actual knowledge that CMI has been removed or altered without authority of the copyright owner or the law, as well as actual or constructive knowledge that such distribution will induce, enable, facilitate, or conceal an infringement."  Id. (citation omitted).

The plaintiff has failed to establish that the defendant violated either subsection (1) or (3) of § 1202(b).  Hamilton denies that he ever removed CMI from the Posted Photo.  In addition, the plaintiff has failed to show that either of the CMI Photos had been published at the time the Posted Photo appeared on the defendant's Instagram page.  There is no evidence as to when the Top CMI Photo, posted to the plaintiff's website, was created or published.  It would appear that the Bottom CMI Photo was not created until after this lawsuit was filed, which was months after the Posted Photo was added to and then promptly removed from the defendant's Instagram account.

## Conclusion

The plaintiff's March 21, 2024 motion for summary judgment is granted in part.  The plaintiff's motion is granted on his claim for copyright infringement.  The defendant's fair use defense fails as a matter of law.  The plaintiff's motions for summary judgment on the defendant's willful violation of the Copyright Act and on the defendant's violation of the DMCA are denied.

Dated:    New York, New York
          July 18, 2024

                                     _____
                                           DENISE COTE
                                  United States District Judge